FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELAINA L. IMANI, individually as Guardian-Advocate for NEHEMIAH EZEKIEL IMANI, NAH'SHON IMANI, IYANA IMANI, NAELAH IMANI, and ISRAEL IMANI,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, DSHS DIVISION OF DEVELOPMENTAL DISABILITIES, DSHS DIVISION OF CHILDREN AND FAMILY SERVICES, WASHINGTON STATE OFFICE OF ADMINISTRATIVE HEARINGS, LAUNI BURDGE, MARY C. MCLACHLAN, MIGDALIA SHACKLEFORD, MARY KIBBE, and LAURA CHRISTENSEN<br><br>Defendants. | No. 2:26-CV-00183-RLP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND GRANTING LEAVE TO AMEND |

Before the Court is Defendants' Motion to Dismiss, ECF No. 36, brought under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants seek dismissal of Plaintiffs' First Amended Complaint, ECF No. 8, which alleges a years-long pattern of discrimination, retaliation, concealment, and deprivation of developmental-disability services arising from interactions with the Washington State Department of Social and Health Services and related state agencies and employees. *See generally* ECF No. 8. Plaintiffs assert claims under 42 U.S.C. §§ 1981 and 1983, Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act, the Fourth and Fourteenth Amendments, and Washington law. *Id.* at 26–38.

After filing the First Amended Complaint, Plaintiffs sought dismissal without prejudice of Plaintiffs Iyana Imani, Naelah Imani, and Israel Imani. ECF No. 31. The Court grants that request. This leaves Elaina Imani, Nehemiah Ezekiel Imani, and Nah'Shon Imani as Plaintiffs.

Defendants seek dismissal of Plaintiffs' First Amended Complaint on several grounds. ECF No. 36. Plaintiffs oppose the motion, ECF No. 39, and Defendants have replied, ECF No. 41. Having reviewed the parties' briefing and the record, the Court grants Defendants' motion in part for the reasons explained below.

BACKGROUND

Plaintiff Elaina L. Imani brings this action individually, as court-appointed Guardian-Advocate for her adult son Nehemiah Imani, and as mother and legal representative for her minor son Nah'Shon Imani. ECF No. 8 at 8. Nehemiah is a 24-year-old adult with autism spectrum disorder and a developmental disability who has been eligible for developmental-disability services through the Washington State Department of Social and Health Services (DSHS) since 2007. *Id.* Nah'Shon is a minor with Trisomy 21 who is alleged to be entitled to early-intervention and supportive services. *Id.* The First Amended Complaint names four state entities as defendants: DSHS, the DSHS Division of Developmental Disabilities (DDA), the DSHS Division of Children and Family Services (DCFS), and the Washington State Office of Administrative Hearings (OAH). *Id.* at 9–10. It also names five state employees in their individual and official capacities: DCFS Area Administrator Launi Burdge; OAH Administrative Law Judge (ALJ) Mary C. McLachlan; DDA Administrator and Enhanced Case Management Program Committee member Migdalia Shackleford; DDA Supervisor and Enhanced Case Management Program Coordinator Mary Kibbe; and DDA Case Resource Manager Laura Christensen. *Id.* at 10–11.

According to the First Amended Complaint, the dispute began in 2011 and 2012 with DSHS's administration of Nehemiah's developmental-disability

services. ECF No. 8 at 12–14. In December 2011, Nehemiah was approved for 90 hours of Medicaid Personal Care services per month. *Id.* at 12. During a January 2012 reassessment, a DDA case manager allegedly told Ms. Imani she had "never been around Black people" and was "uncomfortable," then ended the reassessment. *Id.* Nehemiah's authorized service hours were subsequently reduced from 90 to 34 hours per month. *Id.* Ms. Imani challenged the reduction, and an ALJ reinstated and increased Nehemiah's services in July 2012. *Id.* at 13.

Later that year, Defendant Shackleford, a DDA Administrator, sought to conduct an assessment in the Imani home. *Id.* at 13. Ms. Imani requested a qualified psychologist be present, but Defendant Shackleford allegedly refused and repeatedly demanded entry, warning Nehemiah would not receive services unless she was permitted to conduct the assessment herself. *Id.* at 13–14. After Ms. Imani refused, Defendant Shackleford allegedly arranged for Nehemiah to be placed on "Non-Paid Services" status beginning in December 2012, where he remained until June 2020. *Id.* at 14.

The First Amended Complaint also describes two Thurston County Superior Court actions filed in 2012 and 2013 concerning Nehemiah's services and DSHS's treatment of the Imani family. ECF No. 8 at 14–16. The first action, filed in December 2012, challenged Nehemiah's service reductions and DSHS's alleged noncompliance with an earlier administrative order. *Id.* at 14. After a June 2013

hearing, Ms. Imani filed a second civil action raising additional claims against DSHS and demanding a jury trial. *Id.* at 14–15. Eight Thurston County judges later recused themselves from the second action, which was transferred to Cowlitz County Superior Court. *Id.* at 15–16. The second action was ultimately dismissed without prejudice in October 2013. *Id.* at 16.

The First Amended Complaint next describes a series of Child Protective Services (CPS) proceedings beginning in 2013. ECF No. 8 at 17. On April 23, 2013, CPS opened a neglect case concerning the Imani family. *Id.* In December 2013, a CPS investigator advised the case would be closed, but Defendant Burdge, DCFS Area Administrator, allegedly directed subsequent CPS notices and case documents be sent to a post office away from the Imani residence, which Ms. Imani contends was intended to prevent the family from participating in the case. *Id.* Ms. Imani discovered the diverted correspondence, retrieved the letters, and submitted a records request for the files concerning her family. *Id.* She identifies this as when she "started to find the truth behind what was really going on behind closed doors." *Id.* Three days after the records request, Defendant Burdge sent separate letters to Ms. Imani and her former husband stating findings of physical abuse or neglect were substantiated. *Id.* at 17–18.

Ms. Imani sought administrative review of the CPS findings. ECF No. 8 at 18. Around the same time, a separate administrative matter involving Ms. Imani's

former husband was assigned to Defendant ALJ McLachlan. *Id.* On February 12, 2014, Defendant ALJ McLachlan presided over consolidated CPS proceedings involving the Imani family, and later she presided over separate consolidated mental-health grievance proceedings involving the family. *Id.* Ms. Imani contends Defendant ALJ McLachlan's handling of those proceedings prevented her from presenting evidence concerning the alleged misconduct underlying her claims. *Id.* at 18–19. The grievance proceedings were ultimately dismissed in March 2014 without Ms. Imani presenting that evidence. *Id.* at 19.

Nehemiah remained on "Non-Paid Services" status despite his continued eligibility for developmental-disability services through June 2020. ECF No. 8 at 19–20. During that period, Defendants did not conduct required assessments, provide written notices of action, or advise Ms. Imani of available appeal rights. *Id.* at 20. Medical and developmental records submitted on Nehemiah's behalf were also missing from his file, and Defendants repeatedly represented to Ms. Imani and service providers that he was not eligible for paid services. *Id.* As a result, Nehemiah did not receive paid care, respite, habilitation, or other developmental supports until June 2020. *Id.* at 19–20.

In July 2020, Defendant Shackleford generated an Enhanced Case Management Program (ECMP) referral for Nehemiah but noted he did not meet the program's criteria. ECF No. 8 at 20. Later that year, Defendant Shackleford

reassigned Nehemiah's case to another DDA employee without explanation or Ms. Imani's consent. *Id.* at 20–21. On September 20, 2022, Defendant Christensen, DDA Case Resource Manager, reduced Nehemiah's authorized service hours from 120 to 67 per month, prompting Ms. Imani to request a fair hearing. *Id.* at 21. After receiving the hearing notice, Ms. Imani learned Defendant ALJ McLachlan had again been assigned to the case and immediately objected. *Id.* at 21–22. Defendant OAH thereafter removed Defendant ALJ McLachlan from the case. *Id.* at 22. On March 16, 2023, a different ALJ ordered Nehemiah's service hours increased to 127 per month after finding DSHS had disregarded medical evidence and failed to follow proper assessment procedures. *Id.*

Ms. Imani next alleges that on June 5, 2023, Defendant Christensen scheduled an ECMP staffing meeting for Nehemiah without notifying Ms. Imani, and that a referral was submitted the following day. ECF No. 8 at 23. Defendants Shackleford, Kibbe, and Christensen participated in the June 13–14 staffing meeting, from which Ms. Imani was excluded. *Id.* Nehemiah's file was then prepared for transfer to ECMP, and Defendants issued an enrollment letter "in total secrecy" on August 8, 2023. *Id.* Ms. Imani understood the change as providing "better service" through a smaller caseload and did not know Nehemiah had been enrolled in ECMP, which she characterizes as a surveillance program "authorizing

warrantless home entry under RCW[1] 71A.12.320." *Id.* She states she did not know what ECMP was until she researched the program after Nehemiah's enrollment, at which point she began complaining about the enrollment. *Id.* Ms. Imani further alleges that Nehemiah's enrollment was not supported by a new risk assessment and that the ECMP designation remains on his record. *Id.*

After Nehemiah's enrollment in ECMP, Ms. Imani repeatedly complained to DDA supervisors, regional administrators, and local office leadership about the enrollment and related conduct to no avail. ECF No. 8 at 24. Between August 2023 and December 2025, Nehemiah's case was reassigned to multiple social workers, none of whom contacted him, conducted required assessments, or provided services. *Id.* Because complaints were required to be routed through a local administrator whom Ms. Imani contends was implicated in the ECMP conduct, she claims her reports were effectively blocked from reaching an independent decisionmaker. *Id.* A later-assigned social worker offered to escalate Ms. Imani's concerns but was allegedly prevented from pursuing the matter after raising it with her supervisors, including Defendants Shackleford and Kibbe. *Id.* at 24–25.

In January 2026, Ms. Imani contacted the Washington Attorney General's Office of Risk Management to report what she characterized as retaliation,

---

[1] Revised Code of Washington

concealment, and administrative misconduct, but no action was taken. *Id.* at 25. On March 16, 2026, the Spokane County Superior Court appointed Ms. Imani as Nehemiah's Guardian-Advocate. *Id.* Ms. Imani then filed the instant action. *See id*.

The First Amended Complaint asserts seven causes of action. Count I asserts a § 1983 claim for violation of the Fourteenth Amendment's Due Process Clause against all Defendants. ECF No. 8 at 26–28. Count II asserts a § 1983 claim for violation of the Fourteenth Amendment's Equal Protection Clause against all Defendants. *Id.* at 28–30. Count III asserts a § 1981 claim for racial discrimination in the enjoyment of contractual and property rights against all Defendants. *Id.* at 30–31. Count IV asserts a Title VI claim against DSHS, DDA, and DCFS. *Id.* at 32–33. Count V asserts a Title II ADA claim against DSHS, DDA, and DCFS and against the individual Defendants in their individual and official capacities. *Id.* at 33–34. Count VI asserts a § 1983 claim for unreasonable search and seizure under the Fourth Amendment against all Defendants. *Id.* at 34–36. Finally, Count VII asserts a state-law claim for fraudulent concealment and deceptive practices against DSHS, DDA, and DCFS and against the individual Defendants in their individual and official capacities. *Id.* at 36–38.

As to relief, the First Amended Complaint seeks declaratory and injunctive relief against all Defendants, including relief concerning the provision of services, Nehemiah's ECMP designation, future retaliation, and the future use of ECMP.

ECF No. 8 at 38–39. It also seeks compensatory, punitive, and exemplary damages solely against the individual Defendants in their individual capacities and expressly disclaims monetary damages against the state agency Defendants. *Id.* at 38, 40.

LEGAL PRINCIPLES

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate when a complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive dismissal, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts permit a reasonable inference the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013). The Court need not, however, accept legal conclusions, conclusory allegations, or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

Because Ms. Imani proceeds *pro se*, the Court construes her pleadings liberally and affords her the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). But liberal construction does not relieve a *pro se* plaintiff of

the obligation to allege facts sufficient to state a plausible claim for relief. *See id.*; *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The Court addresses each of the Defendants' arguments for dismissal in turn.

### A. Ms. Imani May Not Litigate Claims Belonging to Nehemiah or Nah'Shon *Pro Se*

Defendants contend Ms. Imani may not litigate claims *pro se* on behalf of Nehemiah or Nah'Shon. ECF No. 36 at 5–6; ECF No. 41 at 2–3. Ms. Imani responds that Federal Rule of Civil Procedure 17(c) expressly authorizes guardians and next friends to bring actions on behalf of minors and incompetent persons and relies on *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990), as recognizing the next-friend doctrine in federal court. ECF No. 39 at 4–5. She also cites 42 U.S.C. § 1983 for the proposition that parents and personal representatives may bring actions on behalf of others. ECF No. 39 at 5. She further contends her Notice of Clarification, ECF No. 31, establishes her authority to proceed as Nehemiah's court-appointed guardian and Nah'Shon's parent and next friend. ECF No. 39 at 5.

The Court agrees with Defendants. Federal law permits parties to "plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. But that privilege of self-representation does not permit a nonattorney to represent another

person. *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). Consistent with that principle, "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997).

Rule 17(c) does not provide otherwise. That rule permits a guardian or next friend to sue on behalf of a minor or incompetent person, but it does not authorize a nonattorney representative to serve as that person's legal counsel. *See Cavanaugh ex rel. Cavanaugh v. Cardinal Loc. Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2005) (explaining Rule 17(c) permits a parent to sue in representative capacity for their child, but does not authorize a parent to act as the child's attorney), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Johns*, 114 F.3d at 876–77.

Nor does *Whitmore* support Ms. Imani's argument. The *Whitmore* Court addressed the requirements for next-friend standing, a doctrine traditionally employed in habeas corpus proceedings; it did not address whether a nonattorney next friend may litigate another person's claims *pro se*. 495 U.S. at 162–66.

Finally, Ms. Imani's reliance on 42 U.S.C. § 1983 is misplaced. That statute identifies a civil cause of action for deprivation of rights, but it does not authorize a nonattorney parent or representative to litigate another person's claims *pro se*.

Ms. Imani may therefore proceed *pro se* only as to claims belonging to her personally. Her status as Nehemiah's court-appointed guardian and Nah'Shon's parent or next friend does not permit her to litigate their claims without counsel. Accordingly, the claims belonging to Nehemiah and Nah'Shon are dismissed without prejudice.

### B. The State Agency Defendants Are Entitled to Eleventh Amendment Immunity from Certain Claims

Defendants argue DSHS, DDA, DCFS, and OAH are immune from suit under the Eleventh Amendment. ECF No. 36 at 6–8; ECF No. 41 at 3–4. Ms. Imani responds Washington waived sovereign immunity through RCW 4.92.090; *Ex parte Young*, 209 U.S. 123 (1908) permits her claims for prospective injunctive relief; and *Hafer v. Melo*, 502 U.S. 21, 25–26 (1991) permits damages claims against state officials sued in their individual capacities.

The Eleventh Amendment bars federal suits against states and arms of the state, "regardless of the nature of the relief sought." *Crowe v. Or. State Bar*, 989 F.3d 714, 730 (9th Cir. 2021) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Thus, absent waiver or valid congressional abrogation, state agencies are immune from suit in federal court. *See id.* Here, DSHS, DDA, DCFS, and OAH are state agencies or divisions of state agencies and therefore fall within this immunity.

Ms. Imani's reliance on RCW 4.92.090 does not establish otherwise. A State's consent to suit in its own courts does not waive Eleventh Amendment immunity absent an unmistakable or unequivocal indication that the State also consented to suit in federal court. *See Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473–74 (1987). RCW 4.92.090 contains no such consent.

Nor does the *Ex parte Young* doctrine permit Ms. Imani to proceed directly against Defendants DSHS, DDA, DCFS, and OAH. The doctrine creates an exception to Eleventh Amendment immunity for certain suits seeking prospective relief against state officials, but it "has no application in suits against the States and their agencies." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Ms. Imani's reliance on *Hafer* is likewise misplaced. *Hafer* holds that state officials sued in their individual capacities are "persons" subject to suit under § 1983 and are not protected by the Eleventh Amendment from individual-capacity claims. 502 U.S. at 25–31. It does not authorize suit against the State or its agencies.

Accordingly, Counts I, II, III, and VI against DSHS, DDA, DCFS, and OAH, and Count VII against DSHS, DDA, and DCFS, are dismissed based on Eleventh Amendment immunity.

The same is not true of Counts IV and V. Count IV asserts a claim under Title VI of the Civil Rights Act of 1964. Congress expressly provided that a State "shall not be immune under the Eleventh Amendment" from suit in federal court for a violation of Title VI. 42 U.S.C. § 2000d-7(a)(1). The Court therefore addresses Count IV separately below. The Court likewise declines to decide whether the Eleventh Amendment bars Count V because that claim is subject to dismissal on a separate ground, discussed below.

## C. Defendant ALJ McLachlan Is Entitled to Judicial Immunity

Defendants contend OAH[2] and ALJ Mary McLachlan are entitled to judicial immunity because the challenged conduct occurred in a judicial capacity. ECF No. 36 at 8–9; ECF No. 41 at 4–5. Ms. Imani responds ALJ McLachlan is not entitled to judicial immunity because the challenged conduct was administrative rather than adjudicative and because ALJ McLachlan allegedly acted in bad faith and without jurisdiction. ECF No. 39 at 7–8.

Judicial officers are immune from liability for acts performed in their judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam). The

---

[2] Because the Court has already concluded that Defendant OAH is entitled to Eleventh Amendment immunity, the Court does not reach Defendants' alternative argument that Defendant OAH is also entitled to judicial immunity.

immunity is not overcome by allegations of bad faith, malice, or corruption. *Id.* at 11. Judicial immunity may be overcome only when the challenged conduct is nonjudicial or when a judicial act is taken in the complete absence of all jurisdiction. *Id.* at 11–12. In determining whether an act is judicial in nature, courts consider whether: "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001).

Here, the conduct alleged against ALJ McLachlan in the First Amended Complaint was judicial in nature. Ms. Imani alleges ALJ McLachlan presided over and consolidated administrative proceedings involving the Imani family and was later assigned to Nehemiah's 2022 fair hearing before Ms. Imani objected and OAH reassigned the matter. ECF No. 8 at 18, 21–22. Those acts arose directly from ALJ McLachlan's role as the assigned ALJ and concerned matters pending before her.

Ms. Imani's allegations of bad faith do not defeat judicial immunity. *See Mireles*, 502 U.S. at 11. Nor does the First Amended Complaint plausibly allege ALJ McLachlan acted in the complete absence of jurisdiction. Rather, it alleges ALJ McLachlan acted as an OAH ALJ in matters assigned to her. Allegations that

she should not have presided over particular matters or improperly exercised her authority do not establish an absence of jurisdiction. Accordingly, ALJ McLachlan is entitled to absolute judicial immunity from damages arising from the judicial acts alleged in the First Amended Complaint.

The First Amended Complaint also seeks injunctive relief preventing Defendant ALJ McLachlan from presiding over future matters involving the Imani family. ECF No. 8 at 39. Section 1983 provides that, in an action against a judicial officer for an act taken in the officer's judicial capacity, "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018). Ms. Imani alleges neither circumstance. Accordingly, her § 1983 claim for injunctive relief against Defendant ALJ McLachlan is also dismissed, with leave to amend.

### D. Defendants' Alternative Grounds for Dismissal

Defendants also seek dismissal of the First Amended Complaint on several claim-specific grounds. Each is discussed in turn.

#### 1. Section 1983 claims (Counts I, II, VI)

Defendants seek dismissal of Ms. Imani's claims under 42 U.S.C. § 1983, asserted in Counts I, II, and VI, on three alternative grounds. ECF No. 36 at 13; ECF No. 41 at 6–8.

a. Personal-Capacity Claims

Defendants contend the individual Defendants are entitled to qualified immunity from Ms. Imani's § 1983 claims against them in their individual capacities because she has not identified clearly established law prohibiting each Defendant's particular conduct. ECF No. 36 at 10–12; ECF No. 41 at 5–6. Ms. Imani responds the constitutional rights at issue were clearly established. ECF No. 39 at 8–10. Specifically, she relies on *Troxel v. Granville*, 530 U.S. 57 (2000), and *Santosky v. Kramer*, 455 U.S. 745 (1982), for the right to parental autonomy; *Brown v. Board of Education*, 347 U.S. 483 (1954), for the right to equal protection; and *Mathews v. Eldridge*, 424 U.S. 319 (1976), for the right to procedural due process. ECF No. 39 at 9.

Qualified immunity shields government officials from liability under § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). Courts may address either requirement first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A right is clearly established only if existing precedent places the constitutional question "beyond debate." *Zorn v. Linton*, 607 U.S. 568, 572 (2026) (per curiam) (citation modified). Ordinarily, this requires identifying a case in which an official acting under similar circumstances was held to have violated the Constitution. *Id.* The precedent must

define the right with a "high degree of specificity," such that every reasonable official would understand the particular conduct at issue is unlawful. *Id.* General principles are therefore insufficient. *Id.*

Here, Ms. Imani has not identified clearly established law applicable to the particular conduct alleged against Defendants Burdge, Shackleford, Kibbe, or Christensen. The cases she cites establish constitutional rights at a general level, but none address conduct sufficiently analogous to the alleged CPS referral, reduction or denial of developmental-disability services, or enrollment in the ECMP. *See* ECF No. 8 at 27–30, 34–36. Nor does Ms. Imani identify authority clearly establishing the particular conduct underlying her Fourth Amendment claim violated the Constitution. Her reliance on these general constitutional principles therefore does not satisfy the clearly established prong of the qualified-immunity analysis. *See Zorn*, 607 U.S. at 572–74.

Because Ms. Imani has not identified precedent placing the constitutionality of the particular conduct alleged against Defendants Burdge, Shackleford, Kibbe, or Christensen "beyond debate," those Defendants are entitled to qualified immunity. *See id.* Accordingly, Counts I, II, and VI are dismissed to the extent they seek damages against Burdge, Shackleford, Kibbe, or Christensen in their individual capacities. The Court does not reach qualified immunity as to ALJ

McLachlan because judicial immunity independently bars the § 1983 damages claims against her.

b. Official-Capacity Claims

Defendants next argue the agency Defendants and the individual Defendants sued in their official capacities are not "persons" subject to suit under § 1983. ECF No. 36 at 12–13. Ms. Imani responds *Ex parte Young*, 209 U.S. 123 (1908) permits claims for prospective injunctive relief against state officials sued in their official capacities. ECF No. 39 at 6. Defendants reply *Ex parte Young* applies only when the named state official has authority to perform, enforce, or cease the challenged conduct. ECF No. 41 at 4.

Defendants are correct as to the state agency Defendants. A State and its agencies are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 70–71 (1989). Accordingly, Counts I, II, and VI are dismissed against DSHS, DDA, DCFS, and OAH on this additional ground without leave to amend.

The same conclusion does not necessarily follow for the individual Defendants sued in their official capacities. Although a state official sued for damages in an official capacity is not a "person" under § 1983, a state official sued in their official capacity for prospective injunctive relief is. *Id.* at 71 n.10. Under *Ex parte Young*, a plaintiff may seek prospective relief against a state official for

an ongoing violation of federal law when the official has a sufficient connection to the challenged conduct. *See Ex parte Young*, 209 U.S. at 157.

Here, the First Amended Complaint expressly limits its damages requests to the individual Defendants in their individual capacities and seeks injunctive relief against Defendants in their official capacities. ECF No. 8 at 38–40. It also alleges Burdge, Shackleford, Kibbe, and Christensen hold positions connected to the child-protective, developmental-disability, and ECMP conduct challenged in the complaint. *Id.* at 10–11. Accordingly, Defendants have not established Ms. Imani's § 1983 claims for prospective relief against those Defendants in their official capacities are subject to dismissal on this ground.

c. Statute of Limitations

Defendants also argue Ms. Imani's § 1983 claims that accrued before April 22, 2023, are barred by the applicable three-year statute of limitations. ECF No. 36 at 13; ECF No. 41 at 6–8. Ms. Imani contends the claims are timely under the continuing violations doctrine, the discovery rule and fraudulent concealment, and equitable tolling. ECF No. 39 at 10–11.

Section 1983 borrows the forum state's statute of limitations for personal injury actions. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014). In Washington, § 1983 claims are subject to a three-year statute of limitations. *Boston v. Kitsap County*, 852 F.3d 1182, 1185 (9th Cir. 2017). Federal

law, however, determines when a § 1983 claim accrues. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019). A claim ordinarily accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the claim. *Id.*

Ms. Imani filed this action on April 22, 2026. ECF No. 1. The three-year limitations period therefore bars § 1983 claims that accrued before April 22, 2023, unless an exception delays accrual or tolls the limitations period. Defendants argue all of Ms. Imani's § 1983 claims accrued before that date. ECF No. 36 at 13. In support, they point to Defendant ALJ McLachlan's conduct, which Ms. Imani knew of by 2022; Defendant Burdge's conduct, which she knew of by 2014; and Defendant Shackleford's conduct, which she knew of by 2022. *Id.*

Ms. Imani first invokes the continuing violations doctrine as a basis to overcome the statute of limitations. She argues the alleged denial of developmental-disability services, retaliatory CPS referrals, concealment of the ECMP, and manipulation of administrative hearings were components of a single, continuing pattern of discrimination and retaliation. ECF No. 39 at 10–11. She further asserts the "last discriminatory act occurred within the limitations period." *Id.* at 11. Defendants argue the doctrine does not apply on these facts. ECF No. 41 at 6–7.

The continuing violations doctrine does not make an otherwise untimely discrete act actionable merely because it is related to conduct occurring within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–14 (2002). The Ninth Circuit applies that principle to § 1983 claims and has explained "little remains of the continuing violations doctrine" for claims based on discrete acts. *Bird*, 935 F.3d at 747–48. Alleging separate acts were undertaken pursuant to a common discriminatory policy does not extend the limitations period for those acts. *See Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003).

The conduct identified by Ms. Imani consists of discrete acts allegedly committed by different individuals, at different times, and in connection with different agency actions. These include denials or reductions of services, Child Protective Services referrals, particular administrative proceedings, and enrollment in the ECMP. Although Ms. Imani alleges these events were part of a common discriminatory and retaliatory scheme, "[t]he allegation that . . . discrete acts were undertaken pursuant to a discriminatory policy does not extend the statutory limitations period." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003).

Ms. Imani does not identify which alleged act constitutes the "last discriminatory act" or explain how that act renders the earlier discrete acts part of a single continuing violation. ECF No. 39 at 11. And even assuming a discrete discriminatory act occurred within the limitations period, that would not render

earlier discrete acts timely. *See Morgan*, 536 U.S. at 110–14; *Bird*, 935 F.3d at 747–48. Accordingly, the continuing violations doctrine does not render timely § 1983 claims based on discrete acts that accrued before April 22, 2023.

Ms. Imani next invokes the discovery rule and fraudulent concealment. She argues DSHS concealed the ECMP, the basis for Child Protective Services referrals, communications between ALJ McLachlan and DSHS officials, and the alleged racial motivation underlying the denial of services. ECF No. 39 at 11. She contends the limitations period therefore did not begin to run until she discovered those concealed facts. *Id.* Defendants respond the First Amended Complaint establishes that Ms. Imani knew of the injuries underlying her claims before April 2023 and that her later discovery of additional information does not delay accrual. ECF No. 41 at 7–8.

A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the claim. *Bird*, 935 F.3d at 743. Fraudulent concealment may delay accrual when the concealment prevents the plaintiff from discovering the existence of the claim, but it does not postpone accrual merely because the plaintiff later discovers additional evidence concerning an injury they already knew had occurred. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997).

Here, the First Amended Complaint establishes Ms. Imani knew of the injuries underlying the allegedly untimely conduct before April 22, 2023. She alleges she discovered the allegedly diverted Child Protective Services correspondence in 2013 and challenged the resulting proceedings in 2014. ECF No. 8 at 17–18. She likewise alleges she objected to Defendant ALJ McLachlan's assignment to Nehemiah's administrative hearing in 2022 and obtained her removal from the matter. *Id.* at 21–22. Although Ms. Imani alleges she later discovered additional information concerning Defendants' motives, communications, or coordination, those allegations do not establish she was unaware of the underlying injuries. Accordingly, neither the discovery rule nor fraudulent concealment renders timely the pre-April 22, 2023 claims challenged by Defendants.

Finally, Ms. Imani invokes equitable tolling. She argues DSHS actively misled her, destroyed evidence, and used the administrative process to exhaust her resources and delay her access to federal court. ECF No. 39 at 11. Defendants respond equitable tolling does not apply on these facts. *See* ECF No. 41 at 8.

Section 1983 borrows the forum state's applicable tolling rules. *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018). Under Washington law, equitable tolling is available when (1) the plaintiff exercised diligence, (2) the defendant's bad faith, false assurances, or deception interfered with the plaintiff's diligent

efforts to timely file, (3) tolling is consistent with the purposes of both the underlying statute and the statute of limitations, and (4) justice requires tolling. *Fowler v. Guerin*, 200 Wn.2d 110, 124–25 (2022); *see also Millay v. Cam*, 135 Wn.2d 193, 206 (1998). Equitable tolling is applied sparingly. *Fowler*, 200 Wn.2d at 123–25.

Ms. Imani does not allege facts showing Defendants' conduct interfered with diligent efforts to timely file her federal claims. Even accepting her allegations that Defendants withheld records, destroyed evidence, and prolonged administrative proceedings, she does not explain how that conduct prevented her from timely filing claims based on injuries she already knew had occurred. Nor does she address whether tolling would be consistent with the purposes of the underlying statutes and the statute of limitations or otherwise required by justice. Accordingly, equitable tolling does not apply.

The statute of limitations does not, however, foreclose consideration of conduct occurring before April 22, 2023, as background evidence supporting an otherwise timely claim. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002) (considering pre-limitations conduct as background evidence supporting a timely constitutional claim); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (explaining untimely discrete acts may be used as background evidence in support of a timely claim). Thus, although Ms. Imani

may not obtain relief for a discrete constitutional violation that accrued before April 22, 2023, conduct occurring before that date may remain relevant to a timely claim or to the availability of prospective relief.

Accordingly, Counts I, II, and VI are dismissed without leave to amend to the extent they seek relief for discrete constitutional violations that accrued before April 22, 2023. Defendants have not established a statute of limitations bar as to alleged constitutional violations that accrued on or after that date.

2. 42 U.S.C. § 1981 Claim (Count III)

Defendants argue Count III should be dismissed because § 1981 does not provide an independent cause of action against state actors. ECF No. 36 at 14. Ms. Imani does not address this argument in her response.

Section 1981 creates substantive rights, but "does not itself contain a remedy against a state actor for such violations." *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023). A plaintiff seeking to enforce rights secured by § 1981 against a state actor must instead proceed under § 1983. *Id.*

Here, Count III asserts a claim under § 1981 for racial discrimination in the enjoyment of contractual and property rights against the state agencies and individual state officials acting under color of state law. ECF No. 8 at 30–31. Because § 1981 does not provide an independent cause of action against state

actors, Count III cannot proceed as pleaded. Accordingly, Count III is dismissed without leave to amend.

3. Title VI Claim (Count IV)

Defendants argue Count IV should be dismissed because Ms. Imani cannot pursue Title VI claims belonging to Nehemiah or Nah'Shon and because the First Amended Complaint does not allege Ms. Imani herself was denied the benefits of a federally assisted program on account of her race. ECF No. 36 at 14–15. Defendants further argue the allegations do not plausibly establish intentional racial discrimination against Ms. Imani. *Id.* at 15. Ms. Imani does not separately respond to these arguments.

Title VI of the Civil Rights Act of 1964 provides "[n]o person in the United States shall, on the ground of race, color, or national origin," be excluded from participation in, denied the benefits of, or subjected to discrimination under a program receiving federal financial assistance. 42 U.S.C. § 2000d. To state a Title VI claim, a plaintiff must plausibly allege the defendant "acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class." *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011). Failing to allege "any particular incidents forming the basis for [a] complaint of racial discrimination under Title VI" constitutes a failure to allege a viable claim under

the statute. *See Johnson v. Pierce Cnty.*, No. 3:21-cv-05841-DGE, 2021 WL 6062632, at *1 (W.D. Wash. Dec. 22, 2021).

Here, Count IV asserts a Title VI claim against DSHS, DDA, and DCFS for racial discrimination in federally assisted programs. ECF No. 8 at 32–33. The specific deprivations alleged, however, concern developmental-disability services provided to Nehemiah and early-intervention services provided to Nah'Shon. *Id.* As explained above, Ms. Imani may not litigate claims belonging to either son *pro se*.

Nor does the First Amended Complaint state a Title VI claim belonging to Ms. Imani personally. It does not allege she was excluded from participation in or denied the benefits of a federally assisted program. Although the complaint recounts a racially charged statement allegedly made by a DDA case manager in 2011, that allegation concerns the subsequent reduction of Nehemiah's services. ECF No. 8 at 12. The remaining allegations that Defendants engaged in a "systemic pattern of racial discrimination" and a "program-wide failure to provide equal access to African American families" are conclusory and do not plausibly allege intentional discrimination against Ms. Imani. *Id.* at 33.

Accordingly, Count IV is dismissed. To the extent Count IV asserts Title VI claims belonging to Nehemiah or Nah'Shon, those claims are dismissed without

prejudice. To the extent Ms. Imani asserts a Title VI claim on her own behalf, the claim is dismissed with leave to amend.

4. Title II ADA Claim (Count V)

Defendants argue Count V should be dismissed because the alleged disability discrimination concerns Nehemiah and Nah'Shon, whose claims Ms. Imani may not pursue *pro se*, and because Ms. Imani does not allege she herself has a disability. ECF No. 36 at 16. Ms. Imani does not separately respond to this argument.

Title II of the Americans with Disabilities Act (ADA) provides "no qualified individual with a disability shall, by reason of such disability," be excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise be subjected to discrimination by a public entity. 42 U.S.C. § 12132.

Count V concerns alleged disability discrimination against Nehemiah and Nah'Shon. ECF No. 8 at 33–34. As explained above, Ms. Imani may not pursue their claims *pro se*. To the extent Ms. Imani seeks relief under Count V on her own behalf, the First Amended Complaint does not adequately plead a Title II claim belonging to her personally.

Accordingly, Count V is dismissed. To the extent Count V asserts ADA claims belonging to Nehemiah or Nah'Shon, those claims are dismissed without

prejudice. To the extent Ms. Imani asserts an ADA claim on her own behalf, the claim is dismissed with leave to amend.

### 5. Fraudulent Concealment and Deceptive Practices (Count VII)

Defendants argue Count VII should be dismissed because the First Amended Complaint does not adequately plead the elements of fraud or fraudulent concealment. ECF No. 36 at 16–17. Ms. Imani responds that she identifies specific misrepresentations and omissions and adequately pleads a unified course of fraudulent conduct under Federal Rule of Civil Procedure 9(b). ECF No. 39 at 13. Defendants reply that Rule 9(b) supplies only a pleading standard and that Ms. Imani still fails to plead a legally cognizable fraud claim with the required particularity. ECF No. 41 at 9–10.

Under Washington law, common-law fraud is based on an affirmative misrepresentation and requires: (1) a representation of existing fact; (2) materiality; (3) falsity; (4) knowledge of falsity; (5) intent that the plaintiff rely on the representation; (6) ignorance of its falsity; (7) reliance; (8) a right to rely; and (9) resulting damages. *Michielli v. U.S. Mortg. Co.*, 58 Wn.2d 221, 225–26 (1961). Fraudulent concealment is a species of fraud and may be established either by pleading those elements or by showing the defendant breached an affirmative duty to disclose a material fact. *Liebergesell v. Evans*, 93 Wn.2d 881, 893 (1980);

*Schreiner Farms, Inc. v. Am. Tower, Inc.*, 173 Wn. App. 154, 163 (2013). In federal court, fraud must also be pleaded with particularity. Fed. R. Civ. P. 9(b).

Count VII does not adequately plead either theory. As to common-law fraud, Ms. Imani alleges Defendants represented the ECMP would provide "better service" and intended to induce her to accept Nehemiah's enrollment without objection. ECF No. 8 at 36–37. But she does not identify which Defendants made the alleged representations, nor does she allege she actually relied on them or had a right to rely on them. *Id.* Indeed, she alleges that Nehemiah was enrolled without notice and that she complained once she discovered the nature of the program. *Id.* As to fraudulent concealment, Ms. Imani alleges Defendants concealed the program's "true nature," but does not allege facts establishing an affirmative duty to disclose that information. *Id.* at 36–37. Moreover, to the extent the claim depends on the allegation that the program authorizes warrantless home entry, the statute she cites in her complaint authorizes home visits, including unannounced visits, but not warrantless entry. *See* RCW 71A.12.320.

Accordingly, Count VII is dismissed. As to DSHS, DDA, and DCFS, Count VII is dismissed without leave to amend because the Eleventh Amendment bars the claim. As to the individual Defendants in their individual capacities, Count VII is dismissed with leave to amend, but only to the extent Ms. Imani seeks to assert a claim belonging to her personally and consistent with the immunity rulings above.

E. Jurisdiction to Review State Court Proceedings

Defendants argue the Court lacks jurisdiction under the *Rooker-Feldman* doctrine over claims previously adjudicated in state court. ECF No. 36 at 17–18; ECF No. 41 at 9. They contend Ms. Imani effectively asks this Court to revisit determinations concerning service levels and program enrollment and to reconsider claims of racial discrimination and denial of services previously raised in Thurston County Superior Court. *Id.* Ms. Imani responds that *Rooker-Feldman* applies only to a direct or de facto appeal of a state-court judgment and that she instead alleges independent constitutional and statutory violations committed by Defendants. ECF No. 39 at 11–12.

The *Rooker-Feldman* doctrine stems from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine "is a well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858–59 (9th Cir. 2008). Congress vested "the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court judgments." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). "The doctrine [therefore] bars a district court from exercising jurisdiction not only over an action explicitly styled

as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Id*. (quoting *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)).

To determine whether an action constitutes a de facto appeal, courts "pay close attention to the relief sought by the federal-court plaintiff." *Id.* at 777–78 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)).

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Noel*, 341 F.3d at 1164.

Here, Ms. Imani does not identify an erroneous state-court ruling as the source of her injuries or seek relief from a state-court judgment. Rather, she alleges Defendants themselves caused constitutional and statutory injuries through discrimination, retaliation, concealment, surveillance, and misconduct in administrative and state-court proceedings. ECF No. 8 at 14–23. Her requested relief likewise principally seeks declarations concerning Defendants' conduct and prospective relief directed at the provision of services, the ECMP, retaliation, and future agency conduct. *Id.* at 38–39. Although the First Amended Complaint seeks a declaration that Defendants' alleged "sabotage" of prior state-court proceedings

violated due process, it does not ask this Court to vacate or reverse the resulting state-court judgments. ECF No. 8 at 39.

Nor does *Rooker-Feldman* bar claims merely because they implicate matters previously addressed in OAH proceedings. The doctrine concerns appellate review of state-court judgments, not administrative determinations standing alone. Because Ms. Imani does not bring a forbidden de facto appeal of a state-court judgment, the Court need not consider whether any of her claims are "inextricably intertwined" with such a judgment. Accordingly, Defendants have not established dismissal is warranted under the *Rooker-Feldman* doctrine.

### F. Leave to Amend

Defendants argue leave to amend should be denied as futile because amendment cannot cure Ms. Imani's inability to represent Nehemiah or Nah'Shon *pro se*, the immunity defenses, or the statute-of-limitations bar. ECF No. 36 at 18–19; ECF No. 41 at 10. Ms. Imani requests leave to amend any deficient claim, arguing she could add factual specificity and refine her legal theories. ECF No. 39 at 15.

Federal Rule of Civil Procedure 15(a)(2) provides leave to amend should be freely given "when justice so requires." A court may deny leave based on undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility alone may justify denial of

leave to amend. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014).

Amendment would be futile as to claims dismissed on grounds that additional factual allegations cannot cure. Ms. Imani cannot cure through amendment her inability to litigate Nehemiah's or Nah'Shon's claims *pro se*, the Eleventh Amendment rulings above, the dismissal of the § 1983 damages claims against ALJ McLachlan, qualified immunity for the personal-capacity § 1983 claims addressed above, the statute of limitations as to § 1983 claims that accrued before April 22, 2023, or § 1981's lack of an independent cause of action against state actors.

The same is not true of claims dismissed for pleading deficiencies. Count IV does not adequately plead a Title VI claim belonging to Ms. Imani personally, Count V does not adequately plead a Title II claim belonging to Ms. Imani personally, and Count VII does not adequately plead fraud or fraudulent concealment. Ms. Imani also has not alleged that a declaratory decree was violated or that declaratory relief was unavailable, as required to obtain injunctive relief against ALJ McLachlan under § 1983. Because those deficiencies could potentially be cured by additional factual allegations, the Court grants Ms. Imani leave to amend those claims only to the extent she seeks to assert claims belonging to her

personally and consistent with the rulings above. Leave to amend is otherwise denied as futile.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff Elaina Imani's request to voluntarily dismiss Iyana Imani, Naelah Imani, and Israel Imani, ECF No. 31, is **GRANTED**. Iyana Imani, Naelah Imani, and Israel Imani are **DISMISSED WITHOUT PREJUDICE** from this action.

2. Defendants' Motion to Dismiss, ECF No. 36, is **GRANTED in part and DENIED in part** as follows:

    a. All claims belonging to Nehemiah Imani and Nah'Shon Imani are **DISMISSED WITHOUT PREJUDICE**, and Nehemiah Imani and Nah'Shon Imani are **DISMISSED WITHOUT PREJUDICE** as Plaintiffs. Unless otherwise stated, the remaining provisions address only claims Ms. Imani asserts on her own behalf.

    b. Counts I, II, and VI, asserted under 42 U.S.C. § 1983, are **DISMISSED WITHOUT LEAVE TO AMEND** against Defendants DSHS, DDA, DCFS, and OAH. Counts I, II, and VI are also **DISMISSED WITHOUT LEAVE TO AMEND** to the extent they seek damages against Defendant ALJ McLachlan or against Defendants Burdge, Shackleford, Kibbe, and Christensen

in their individual capacities, or seek relief for discrete constitutional violations that accrued before April 22, 2023. To the extent Counts I, II, and VI seek injunctive relief against Defendant ALJ McLachlan, those claims are **DISMISSED WITH LEAVE TO AMEND**, but only if Ms. Imani can allege a declaratory decree was violated or declaratory relief was unavailable.

c. Defendants' motion is **DENIED** as to Ms. Imani's remaining claims in Counts I, II, and VI seeking prospective relief against Defendants Burdge, Shackleford, Kibbe, and Christensen in their official capacities.

d. **Count III**, asserted under 42 U.S.C. § 1981, is **DISMISSED** as to all Defendants **WITHOUT LEAVE TO AMEND.**

e. **Count IV**, asserted under Title VI of the Civil Rights Act of 1964, is **DISMISSED WITH LEAVE TO AMEND**, but only to the extent Ms. Imani can allege a Title VI claim belonging to her personally.

f. **Count V**, asserted under Title II of the Americans with Disabilities Act, is **DISMISSED WITH LEAVE TO AMEND,** but only to the extent Ms. Imani can allege a Title II claim belonging to her personally.

g. **Count VII**, asserting fraud, fraudulent concealment, and deceptive practices under Washington law, **is DISMISSED WITHOUT LEAVE TO AMEND as to Defendants DSHS, DDA, and DCFS. Count VII is DISMISSED WITH LEAVE TO AMEND as to the individual Defendants in their individual capacities**, but only to the extent Ms. Imani can allege a claim belonging to her personally and consistent with the rulings above**.**

h. Defendants' request for dismissal under the *Rooker-Feldman* doctrine is **DENIED.**

3. **Ms. Imani may file a Second Amended Complaint within thirty (30) days of the date of this Order**. Any Second Amended Complaint may amend **only those claims for which leave to amend is granted above** and must include any surviving claims under Counts I, II, and VI that Ms. Imani intends to continue pursuing. Ms. Imani may not reassert claims dismissed without leave to amend.

4. If Ms. Imani does not file a Second Amended Complaint within thirty (30) days, the Court will proceed with the First Amended Complaint, ECF No. 8, as limited by this Order, and only the claims identified above as surviving dismissal will remain.

**IT IS SO ORDERED.**

The District Court Clerk is directed to enter this Order and forward copies to Ms. Imani and counsel.

DATED September 28, 2026.

REBECCA L. PENNELL
United States District Judge